SAGINAW COUNTY TOWNSHIP OFFICERS ASSOCIATION,
INC., *v.* CITY OF SAGINAW.

1. STATUTES—PROVISO.

A proviso in a statute is used to qualify what immediately precedes it in the section and is to be accepted according to its natural, common, and obvious meaning.

2. MUNICIPAL CORPORATIONS—REPRESENTATION ON BOARD OF SUPERVISORS—CONSTRUCTION OF STATUTES—PROVISO.

Provision in amendment, enacted in 1919, of section of 1909 home-rule city act whereby statute was caused to read that city's representation on county board of supervisors should be determined by a population formula *"provided* that wherever the representation of cities upon the board of supervisors of the county has been fixed by law it shall remain as now fixed until changed by charter provision" is construed as a proviso qualifying and excepting what immediately precedes the word *provided* in the section (PA 1909, No 279, § 27, as amended by PA 1919, No 84).

3. SAME—REPRESENTATION ON BOARD OF SUPERVISORS—CONSTRUCTION OF STATUTES.

Home-rule city whose representation on county board of supervisors had been fixed by local acts in 1889 and 1891 came within proviso of section of home-rule act setting forth formula for determining such representation provided that wherever representation of cities had been fixed by law it should remain as fixed until changed by charter provision without power to increase it beyond preceding population formula and provided also that representation could not be decreased except by express provision of the charter (Const 1908, art 8, §§ 7, 20, 21; LA 1889, No 455, as amended by LA 1891, No 257; PA 1909, No 279, § 27, as amended by PA 1919, No 84, and PA 1923, No 170).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 3] 50 Am Jur, Statutes §§ 430, 435–440.
[4] 37 Am Jur, Municipal Corporations §§ 105, 106.
[5] 14 Am Jur, Counties §§ 26–33.
[6] 14 Am Jur, Costs § 91.

4. Same—Representation on Board of Supervisors—Appointment by City Council.

> Action of home-rule city council in appointing representatives to county board of supervisors to serve at the pleasure of the council, *held*, within authority conferred upon council by statute and city charter with respect to such representation (Const 1908, art 8, §§ 7, 20, 21; PA 1909, No 279, § 27, as amended by PA 1919, No 84, and PA 1923, No 170; Saginaw City Charters 1913, 1935).

5. Same—Representation on Board of Supervisors—Appointment by City Council.

> The fact that representatives of home-rule city on county board of supervisors are appointed to serve at the pleasure of the council might result in possible defalcations in the exercise of their fiduciary relationship to the entire county could form no basis for declaring the method of selecting such representatives illegal (Saginaw City Charter 1935).

6. Costs—Construction of Statutes—City's Representation on Board of Supervisors.

> No costs are allowed in county township officers association's action against city for declaration of rights in respect to number and manner of appointment of home-rule city's representatives to the county board of supervisors, a matter of statutory construction being involved (Const 1908, art 8, §§ 7, 20, 21; LA 1889, No 455, as amended by LA 1891, No 257; PA 1909, No 279, § 27, as amended by PA 1919, No 84, and PA 1923, No 170; Saginaw City Charters 1913, 1935).

Appeal from Saginaw; Cash (Paul R.), J., presiding. Submitted February 9, 1964. (Calendar No. 62, Docket No. 50,252.) Decided September 2, 1964.

Bill by Saginaw County Township Officers Association, Inc., a nonprofit Michigan corporation, and Edward McNamara, personally and as chairman of Saginaw county board of supervisors, against the City of Saginaw, a municipal corporation, and its council members and representatives on the county board of supervisors, for declaration of rights in respect to number and manner of appointment of

city representatives to the county board. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Floyd T. Fuss,* for plaintiffs.

*W. Vincent Nash,* City Attorney, for defendants.

SMITH, J.  Plaintiffs seek through this declaratory judgment suit to reduce the number of representatives on the Saginaw county board of supervisors from the city of Saginaw from 24 to 12.  Primarily involved is an interpretation of the home-rule cities act, PA 1909, No 279, specifically section 27 as amended.*  A second question is whether the Saginaw city council may appoint city representatives, including temporary substitutes, to the board of supervisors to serve at the pleasure of the council. The constitutional question of apportionment of supervisors is not presented in this case.

The body corporate known as the city of Saginaw was originally chartered by the legislature in Act No 455 of the Local Acts of 1889.  This act was amended by Act No 257 of the Local Acts of 1891, which provided, among other things, for 24 city representatives on said county board.  Ever since 1891, the city has had the same number of representatives on the board through various changes in State and local law, as hereinafter appears.

The city was operating under revised legislative charter, mentioned above, when the Constitution of 1908 was adopted.  The Constitution required the legislature to provide by general law for incorporation of cities.  Const 1908, art 8, § 20.  It is further set forth (section 21) that "Under such general laws, the electors of each city and village shall have power and authority to frame, adopt *and amend its charter,*

---

* CLS 1961, § 117.27 (Stat Ann 1963 Cum Supp § 5.2106).

*and to amend an existing charter of the city or village heretofore granted or passed by the legislature* for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, *subject to the Constitution and general laws of this State.*" (Emphasis supplied.) In the same article 8, at section 7, the Constitution directs that "Cities shall have such representation in the boards of supervisors of the counties in which they are situated as may be provided by law." The legislature did enact a general law for incorporation of cities, and, insofar as this case is concerned, the statute so provided is the home-rule cities act as amended. PA 1909, No 279, *supra.* The act, of course, provides for city representation on county boards. Such provisions are contained in section 27 of said act.

Section 27 of the home-rule cities act as enacted in its original form provided as follows:

"Each city, except as is otherwise provided by law, shall have at least 1 representative on the board of supervisors of the county. The *present representation of cities now organized* on such boards of supervisors *shall remain as now fixed, until changed according to law,* but no city shall have the power to increase its representation on such board of supervisors." (Emphasis supplied.)

It is not disputed that under the home-rule cities act, and specifically section 27 quoted above, the city of Saginaw, which was already organized and had its representation on the county board fixed, retained such representation under the plain wording of the section. Neither is it in dispute that such representation was retained when electors of the city adopted Saginaw's first home-rule charter in 1913.

What is in serious dispute, though, is the effect of a 1919 amendment to said section 27. By the

amendment, representation by population was provided for home-rule cities already organized or to be organized. Of special significance is the proviso which is italicized for emphasis. Section 27, as amended by PA 1919, No 84, read as follows:

"Any city now organized or which may hereafter be *organized,* may, by its charter, to be adopted or amended in accordance with the provisions of this act, provide for the selection by appointment or election of representatives on the board of supervisors of the county; the number of such representatives on said board of supervisors shall be determined by the population of such cities as shown by the last census * * * [population formula] *Provided, That wherever the representation of cities upon the board of supervisors of the county has been fixed by law it shall remain as now fixed until changed by charter provision,* and no city shall have power to increase its representation on such board of supervisors beyond the number provided for in this section." (Emphasis supplied.)

The following was added to this by PA 1923, No 170:

. "nor shall the representation of any city on the board of supervisors be decreased by revision of its charter unless so expressly provided for in such revised charter."

Plaintiffs contend that by this 1919 amendment, the Saginaw city charter was "automatically amended" according to the population formula which at that time would have reduced the number of representatives from 24 to 8. The number would now be 12 under the formula, based upon the city's present population.

Defendants argue that the proviso which immediately follows the population formula in the 1919 amendment quoted above permits cities under the .

act to retain representation previously "fixed by law" until changed by charter provision. They point out that in Saginaw's present home-rule charter, adopted in 1935, the number of representatives is unchanged. That the 1935 charter did not, itself, reduce the number of representatives is also not in dispute.

The first question is did the 1919 revision of section 27, containing its population schedule, as construed with its proviso, alter the city's representation on the board. Dispute persists as to the effect of the proviso upon the population formula which precedes it in revised section 27. Plaintiffs' ultimate argument, on this point, is that "had the proviso been intended to permit cities to violate the formula by previous adoption of a different representation, it * * * would have used an 'exception,' " not a proviso. No authority is cited. Defendants, on the other hand, allude to the language in question as an exception in the form of a proviso. The distinction between a proviso and an exception has been referred to as academic. *N. & M. Friedman Co.* v. *Atlas Assurance Co.*, 133 Mich 212, 221. However, it would add nothing to the discussion of this case to draw the fine distinctions between a proviso and an exception. This is adequately pursued in the law dictionaries. See Black's Law Dictionary (3d ed), p 1456, and 3 Bouvier's Law Dictionary (Rawle's 3d Rev), p 2761. A proviso is used to limit, modify or explain the main part of the section to which it is appended. *Luce* v. *State Highway Commissioner,* 181 Mich 599; *Ford Motor Company* v. *Village of Wayne,* 358 Mich 653. And, a proviso is to be accepted according to its natural, common and obvious meaning. *Township of Clearwater* v. *Kalkaska County Supervisors,* 187 Mich 516. From the language of the 1919 revision of section 27, *supra,* which appears after the word "provided," it seems clear

that this is a proviso, and is plainly used to qualify what immediately precedes it in the section.

It is our opinion that it was the intention of the legislature in attaching said proviso to qualify the population formula set out in the section immediately before the proviso by excepting or rendering the formula inapplicable to cities whose representation on boards of supervisors had at the time of the 1919 revision, already been "fixed by law." Such cities were permitted to retain their representation "until changed by charter," but no increase was permissible beyond the population formula provided in the section. Later, in 1923, the section was amended, as shown above, to permit no decrease in representation by charter revision unless expressly so provided in the charter.

We think legislative intent is clear, particularly as applied to the facts in this case. The city of Saginaw is a city organized under the act. Its charter was adopted under the act in 1913, and was revised and amended pursuant to the act in 1935. Further, its representation on the county board was fixed and continued by the law of the legislature in local acts prior to passage of the home-rule cities act. Upon passage of the act, the language of section 27 of the act provided that "present representation of cities now organized on such boards of supervisors shall remain as now fixed, until changed according to law." Although the law was changed in the 1919 amendment to provide representation by population in certain situations therein described, the proviso did except from the population formula cities in the position of Saginaw in the following manner:

"Provided, that wherever the representation of cities upon the board of supervisors of the county has been fixed by law, it shall remain as now fixed until changed by charter provision."

·As we construe this proviso, it could only mean that the city of Saginaw which, concededly, had its representation previously· "fixed by law," that is, prior to this 1919 amendment (including proviso), was permitted to retain its representation "until changed by charter provision." That it neither attempted to increase nor decrease its representation by its 1935 charter is not in question. We conclude, therefore, that the city of Saginaw legally retained its representation of 24 on the county board of supervisors.

The second question is whether or not the Saginaw city council may appoint city representatives, including temporary substitutes, to the board of supervisors to serve at the pleasure of the council. Section 27, *supra,* permits cities under the home-rule cities act to provide by city charters "for the selection *by appointment or election* of representatives on the board of supervisors." The Saginaw city charter provides for appointment of representatives to serve at the pleasure of the city council. Plainly there is no prohibition either in the act or in the charter against appointment of representatives to serve at the pleasure of the city council. Nor are we directed to any authority suggesting same.

However, plaintiffs place substantial reliance upon *Myers* v. *Post,* 256 Mich 156. In that case, all city representatives on the county board of supervisors voted to reject an offer to lease certain county property for $3,000 annually, and instead voted to lease the property to 1 of the cities whom they represented for $501 annually. In restraining supervisors from entering into such an onerous transaction, this Court said that the board of supervisors stands in a fiduciary relationship to the entire county and that the proposed transaction was a constructive fraud upon the rights of taxpayers of the county. Plaintiffs herein neither alleged nor proved anything

faintly resembling constructive fraud. They simply point to a number of possible defalcations which could develop from the method of selecting representatives by the city council. Obviously, this can form no basis for declaring the method illegal.

The judgment is affirmed. No costs, this being a matter of statutory construction.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, O'HARA, and ADAMS, JJ., concurred.