BROWN v SHELL OIL COMPANY

Docket No. 63011. Submitted April 8, 1983, at Lansing.—Decided
August 16, 1983. Leave to appeal applied for.

Albert K. Brown and other holders of royalty interests as lessors
of mineral rights in oil wells owned and operated by defendant,
Shell Oil Company, brought an action in Grand Traverse
Circuit Court challenging, among other things, Shell's practice
of withholding from royalty payments a pro-rata share of the
state severance tax on oil and gas. The trial court, Charles M.
Forster, J., granted defendant summary judgment on the sever-
ance tax claim, holding that the tax statute defined the plain-
tiffs as producers who were required to pay their proportionate
share of the tax and that, therefore, plaintiffs had failed to
state a claim upon which relief could be granted with regard to
Shell's withholding of the taxes from the royalty payments.
Plaintiffs appeal, alleging that they are not subject to the tax
because they are not "engaged in the business of severing from
the soil, oil or gas" and that summary judgment was improp-
erly granted because they had raised a question of fact by
denying that they were so engaged. *Held:*

1. Payment of the severance tax is the responsibility of all
"producers", as defined in the statute, including holders of
royalty interests such as plaintiffs, due to a 1965 amendment to
the statute, notwithstanding a separate provision which retains
the original qualification of a producer as one "engaged in the
business of severing from the soil".

2. A further reason for assessing the severance tax against
holders of royalty interests as well as lessees actually engaged
in severing the oil or gas from the soil is that the severance tax
is in lieu of other related property taxes.

3. Plaintiffs are, as a matter of law, producers who are
subject to payment of their share of the severance tax. They
therefore failed to state a cause of action upon which relief

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 145, 146.
[2] 73 Am Jur 2d, Statutes § 343.
[3] 71 Am Jur 2d, State and Local Taxation §§ 219, 220.
[4] 71 Am Jur 2d, State and Local Taxation § 614.

could be granted and did not raise an issue of fact. Summary judgment was proper.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION.

The primary rule of statutory construction is to ascertain and enforce the legislative intent in enacting the provision in question, reviewing the language in the context of the entire act and its amendments.

2. STATUTES — JUDICIAL CONSTRUCTION — AMENDMENTS TO STATUTES.

An amendment is generally construed as changing the meaning of a statute, and an amended statute should be interpreted in light of court decisions which prompted the amendment and should be liberally construed so as to correct defects in predecessor statutes.

3. TAXATION — OIL AND GAS — SEVERANCE TAX — PRODUCERS.

A lessor of mineral rights holding a royalty interest is a "producer" for purposes of the statute imposing a severance tax on producers of oil and gas, and is therefore subject to payment of a pro-rata share of the tax (MCL 205.303, 205.312[2]; MSA 7.353, 7.362[2]).

4. TAXATION — OIL AND GAS — SEVERANCE TAX.

The oil and gas severance tax is in lieu of all other property taxes upon the oil or gas, the property rights attached thereto, leases or rights to develop and operate the land, and any values created by the property rights or leases (MCL 205.315; MSA 7.365).

*Thompson, Zirnhelt, Bowron, Senger & Rosi, P.C.* (by *Philip R. Rosi*), for plaintiffs.

*Foster, Swift, Collins & Coey, P.C.* (by *Webb A. Smith* and *Scott A. Storey*), and *Lynam & Flynn* (by *Terence V. Lynam*), for defendant.

Before: D. E. HOLBROOK, JR., P.J., and HOOD and T. M. GREEN,* JJ.

HOOD, J. Plaintiffs appeal as of right from a Grand Traverse County Circuit Court order grant-

* Circuit judge, sitting on the Court of Appeals by assignment.

ing defendant partial summary judgment, GCR 1963, 117.2(1).

Plaintiffs are holders of royalty interests as lessors of mineral rights in oil wells owned and operated by defendant, Shell Oil Company. Shell deducts a pro-rata share of the state severance tax on oil and gas, MCL 205.301 *et seq.;* MSA 7.351 *et seq.,* from plaintiffs' royalty interests. The leases between plaintiffs and Shell are silent regarding defendant's authority to withhold and deduct such taxes from plaintiffs' royalties. Plaintiffs brought this suit to challenge this and other of Shell's practices.

The trial court rejected plaintiffs' claim that the severance tax statute did not authorize Shell to withhold a proportionate share of that tax from plaintiffs' royalty interests. Rather, the trial court ruled as a matter law that the statute defined plaintiffs as producers and, as such, that plaintiffs are required to pay their proportionate share of the severance tax. Thus, plaintiffs failed to state a claim in regard to Shell's practice of withholding a share of the severance tax from their royalties.

The statute authorizing a severance tax on oil and gas, 1929 PA 48, as amended by 1965 PA 299, states in part:

"Sec. 1. There is hereby levied upon each producer engaged in the business of severing from the soil, oil or gas, a specific tax to be known as the severance tax." MCL 205.301; MSA 7.351.

" 'Producer' as used in this act means a person who owns, or is entitled to delivery of a share in kind or a share of the monetary proceeds from the sale of, gas or oil as of the time of its production or severance." MCL 205.312(2); MSA 7.362(2).

In this appeal, plaintiffs concede that they are

producers as defined by the statute. Nevertheless, they argue that the trial court erred by finding them responsible for a proportionate share of the severance tax because they are not producers who are "engaged in the business of severing from the soil, oil or gas". Moreover, plaintiffs argue that, because they denied in their complaint that they were engaged in the business of severing, they raised a fact question that precludes the grant of summary judgment for failure to state a claim, GCR 1963, 117.2(1).

Shell argues that the trial court's statutory interpretation was correct because the Legislature's amendment to the statute in 1965 added the definition of producer in order to make holders of royalty interests proportionately responsible for payment of the severance tax.

This question of the interpretation of the statute authorizing an oil and gas severance tax is novel in this Court. We review the statute by applying the well-recognized rules of statutory interpretation and by reviewing cases in other jurisdictions which have interpreted similar statutes.

The primary rule of statutory construction is to ascertain and enforce the legislative intent in enacting the provision. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). Insight into legislative intent must first be obtained by a review of the statute's language in the context of the entire act plus its amendments. *Kizer v Livingston County Board of Comm'rs,* 38 Mich App 239, 349-350; 195 NW2d 884 (1972). While every word and phrase of a statute is to be given effect, *Melia, supra,* an amendment is generally construed as changing the meaning of a statute. *Reinelt v Public School Employees' Retirement Board,* 87 Mich App 769, 774; 276 NW2d 858

(1979), *lv den* 407 Mich 855 (1979). Amended statutes should be interpreted in light of court decisions which prompted the amendment. *E F MacDonald Co v Dep't of Treasury,* 62 Mich App 626, 632; 233 NW2d 678 (1975). Amending legislation should be liberally construed so as to correct defects in predecessor statutes. *E F MacDonald, supra.*

Although there is no Michigan case law on point prior to the 1965 amendment, the Attorney General in OAG 1963-1964, No 4160, p 118 (June 17, 1963), did interpret the severance tax statute. In that opinion, the Attorney General said that payment of severance and privilege taxes are the primary responsibility of producers of oil and gas, not of holders of royalty interests. The opinion was prompted by the state's own Conservation Department questioning the practice by which oil companies holding leases from the state withheld from the state's 12-1/2% royalty interest a pro-rata share of both the severance tax and the separate privilege tax, MCL 319.22; MSA 13.139(22), before its amendment by 1973 PA 61. The Attorney General relied in part upon the commentator in Summers, The Law of Oil and Gas, § 801, p 410, who concluded that the pre-1965 severance tax statute did not require the royalty owner to bear any part of the then 2% severance tax upon the extracted gas and oil.

Section 1 of the severance tax act prior to 1965 stated:

"There is hereby levied upon each corporation, association, or person engaged in the business of severing from the soil oil or gas, a specific tax to be known as the severance tax. * * *"

The 1965 amendment substituted the term pro-

ducer for corporation, association, or person and added the definition of that term in § 12. The 1965 amendment also altered the language of § 3 of the act which provides the tax rate, computation, payor, and method of withholding. The pre-1965 § 3 provided:

"The severance tax required to be paid by each producer at the time of rendering each monthly report, or by any pipe line company, common carrier or common purchaser, for and on behalf of any such producer, shall be in the amount of two (2) per cent of the gross cash market value of the total production of such oil or gas during the preceding monthly period. The value of all such production shall be computed as of the time when and at the place where the same have been servered or taken from the soil immediately after such severance. *Except as otherwise provided in this section, the payment of said severance tax shall be required of the severer or producer actually engaged in the operation of severing the oil or gas.*" MCL 205.303; MSA 7.353. (Emphasis added.)

The emphasized language above was amended in 1965 to provide: "Except as otherwise provided in this section, the payment of the severance tax shall be required of each producer."

We find that the 1965 amendment to the severance tax act was, in part, a reaction to OAG 1963-1964, No 4160, *supra.* Although § 1 still retains the phrase qualifying a producer as one "engaged in the business of severing from the soil * * *", the amended statute now requires the payment of the severance tax to be the responsibility of all producers, including holders of royalty interests. We note that § 3 now explicitly exempts the state, as a producer, from paying any severance tax.

We find additional support for this interpretation in cases from other jurisdictions. In some

decisions, similar statutes, even though explicitly allowing operators to withhold a pro-rata share of the tax from royalty interests, have been held unconstitutional. See *Cole v Pond Fork Oil & Gas Co*, 127 W Va 762; 35 SE2d 25 (1945), *cert den* 326 US 765; 66 S Ct 147; 90 L Ed 461 (1945) (statute invalid as impairing obligation of contract); *Ohio Oil Co v Wright*, 386 Ill 206; 53 NE2d 966 (1944) (statute was unconstitutional for lack of uniformity). Other jurisdictions have reviewed the specific language of their statutes and held that the gas or oil tax was to be assessed against the lessee only as the party engaged in the business of owning, controlling, managing, or operating the oil well. See *Norum v Ohio Oil Co*, 83 Mont 353; 272 P 534 (1928); *Burbank v Sinclair Prairie Oil Co*, 304 Ky 833; 202 SW2d 420 (1946).

Plaintiffs did not raise any constitutional challenges in this case. Instead, plaintiffs rely particularly on *Norum, supra*, for arguing that the qualifying language in § 1, "engaged in the business of severing", means that the Michigan Legislature intended only to assess the severance tax against lessee operators such as Shell. However, plaintiffs' reliance is misplaced. *Norum* dealt with a gross production licensing tax. In *Byrne v Fulton Oil Co*, 85 Mont 329; 278 P 514 (1929), the same court upheld the constitutionality of another Montana statute that permitted the lessee or operator to withhold a ratable portion of a net proceeds tax from the lessor's royalty interest. The Montana Supreme Court justified the distinction between the *Norum* decision and its decision in *Byrne* by finding the net proceeds tax to be in the nature of a property tax assessable against a holder of a royalty interest.

In *Kanawha Valley Bank v United Fuel Gas Co*,

121 W Va 96; 1 SE2d 875 (1939), the court followed the *Byrne* distinction between a gross production tax that is collected in lieu of other property taxes and the West Virginia statutory tax on oil and gas proceeds which was not a substitute for other property taxes. A similar analysis was followed in *Miller v Buck Creek Oil Co,* 38 Wy 505; 269 P 43 (1928). That court held that a gross production tax on oil produced could be proportionately withheld from a lessor's royalty interest by the payor operator. Such taxes were held to be property taxes rather than a license, privilege, or occupation tax on only the operators. The Wyoming statute explicitly stated that the gross production statute was assessed in lieu of other taxes upon the land.

This distinction between a gross proceeds-type of tax and a licensing or privilege tax is also relevant here. The severance tax act explicitly states:

"Sec. 15. The severance tax herein provided for shall be in lieu of all other taxes, state or local, upon the oil or gas, the property rights attached thereto or inherent therein, or the values created thereby; upon all leases or the rights to develop and operate any lands of this state for oil or gas, the values created thereby and the property rights attached to or inherent therein: Provided, however, Nothing herein contained shall in anywise exempt the machinery, appliances, pipe lines, tanks and other equipment used in the development or operation of said leases, or used to transmit or transport the said oil or gas: And provided further, That nothing herein contained shall in anywise relieve any corporation or association from the payment of any franchise or privilege taxes required by the provisions of the state corporation laws." MCL 205.315; MSA 7.365.

Thus, we conclude that, assuming that the Attorney General was correct in stating that the oil

and gas severance tax was assessable only against lessee operators, the 1965 amendment to that act changed the act to provide that all producers, including those holding only royalty interests, were accountable for their pro-rata share of the tax. Moreover, because the severance tax is in lieu of other related property taxes, it is assessable against royalty holders as well as lessees who are actually engaged in the business of severing the oil or gas from the soil. Section 15 clearly indicates that the severance tax is not in the nature of a business, licensing, privilege, or occupational tax.

Because we find that the language of the severance tax act includes plaintiffs as a matter of law as producers who must pay their share of the tax, we agree with the circuit court that plaintiffs failed to state a cause of action. The plaintiffs did not raise a factual issue by alleging that they were not "engaged in the business" of severing oil and gas from the soil.

Affirmed.