COYNE v HIGHLAND TOWNSHIP

Docket No. 98582. Submitted January 12, 1988, at Detroit. Decided
June 20, 1988.

Patrick A. Coyne purchased a cottage on Upper Pettibone Lake
in Highland Township, Oakland County, in 1964. From 1968 to
1978, Coyne made several repairs or improvements to the
cottage, including (1) the removal of screens on the porch and
the filling of the openings thus created with concrete blocks, (2)
the removal of a wall between the porch and the interior living
space, (3) the replacement of eight windows with vinyl-clad
windows and the replacement of a wooden door with a steel
insulated door, (4) the recovering of a floor and the replacement
of a ceiling, and (5) repairs to the roof. In 1979, the township
underwent a general reappraisal conducted by the Oakland
County Equalization Department. In 1982, Highland Township
assessed Coyne's property at $17,100. Coyne contested the
assessment before the Michigan Tax Tribunal, contending that
the township erroneously included in its assessment the repairs
and improvements made by Coyne and that the property
should be assessed at $11,000. The tribunal affirmed the assess-
ment made by the township. Coyne appealed.

The Court of Appeals *held:*

1. The Tax Tribunal erred in affirming the township's inclu-
sion of the repairs or improvements made, with the exception
of the masonry work done to the porch windows, in the assess-
ment of Coyne's property. All the repairs or improvements,
with the one exception, shall be excluded from the assessment
of the property.

2. The tribunal erred in concluding that work done by Coyne
prior to December 31, 1976, the effective date of the applicable
statute, does not qualify for exclusion under the statute. The
relevant date is that of the assessment, not of the repair.
Having failed to reassess the property before December 31,
1976, when some of these repairs and improvements could have

REFERENCES

Am Jur 2d, State and Local Taxation §§ 704 *et seq.,* 820, 827.
See the Index to Annotations under State and Local Taxation.

properly been considered by the assessor, the township is now foreclosed from including those items in the assessment.

3. Coyne's contention that the assessor improperly considered the repairs and improvements in determining which condition classification, above average, average, or below average, to classify the property in arriving at an effective age of the building, resulting in the house being classified as being above average, was not fully addressed by the tribunal. Remand is necessary for the tribunal to address the issue of whether the repairs and improvements which are excludable under the statute from inclusion in the assessed valuation should also be excluded from consideration in determining the effective age of a building and, if those repairs should be ignored in arriving at an effective age, the tribunal should determine what the effective age of Coyne's house is without reference to those items which should be excluded from the assessment.

4. Coyne's argument that the tribunal erred in accepting the township's valuation of his property even though comparable properties in the area relied upon by the parties had lower valuations was not addressed by the township on appeal and will not be addressed by the Court of Appeals, even though Coyne's argument seems to have some factual merit. On remand, it is recommended that the tribunal reconsider this issue.

Affirmed in part, reversed in part, and remanded.

1. TAXATION — TAX TRIBUNAL — APPEAL.

Court review of decisions of the Tax Tribunal, in the absence of fraud, is limited to determining whether the tribunal made an error of law or adopted a wrong principle, and the factual findings of the tribunal are final, provided that they are supported by competent and substantial evidence.

2. TAXATION — RESIDENTIAL PROPERTY — ASSESSMENTS — HOME IMPROVEMENT ACT.

The removal of screens from the porch of a residential property and the filling of the openings thus created with concrete blocks does not constitute the normal repair or replacement of existing masonry but, rather, the addition of new masonry for purposes of the home improvement act, and the value of the improvement is therefore includable in the true cash value of the property for tax assessment purposes after December 31, 1976 (MCL 211.27[2]; MSA 7.27[2]).

3. TAXATION — RESIDENTIAL PROPERTY — ASSESSMENTS — HOME IMPROVEMENT ACT.

Repairs and improvements made to a residence prior to Decem-

ber 31, 1976, may qualify for exclusion from the true cash value of the property for tax assessment purposes if they meet the other criteria for exclusion under the home improvement act; the relevant date is that of the assessment, not of the repair or improvement (MCL 211.27[2]; MSA 7.27[2]).

Patrick A. Coyne, in propria persona.

*Leo Goldstein & Associates, P.C.* (by *Leo Goldstein* and *Mark Burstein*), for respondent.

Before: Sawyer, P.J., and R. M. Maher and T. M. Burns,* JJ.

Sawyer, P.J. Petitioner appeals from a judgment of the Michigan Tax Tribunal, which affirmed the assessment made by respondent on certain residential property owned by petitioner in Oakland County. The dispute concerns whether respondent properly took into account certain repairs or improvements in the property in assessing the value of petitioner's property or whether those items should have been excluded from the assessment pursuant to the home improvement act of 1976, MCL 211.27(2); MSA 7.27(2). With one exception, we reverse the decision of the tribunal.

This case involves a cottage purchased by petitioner in 1964 on Upper Pettibone Lake. Respondent assessed the property at $17,100 for tax year 1982. Petitioner claims the assessment should be approximately $11,000. The differences in value arrived at by the parties arise mainly from petitioner's view that certain repairs or improvements to the cottage made by petitioner over a number of years should not be included in the assessment under the above-mentioned act, while respondent

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

maintains that those repairs or improvements were properly included.

The repairs or improvements at issue were made at various times from 1968 to 1978. However, apparently none of these were considered by respondent until 1979, when the township underwent a general reappraisal which was conducted by the employees of the Oakland County Equalization Department. At issue are the following items: (1) the removal of screens on the porch and the filling of the openings thus created with concrete blocks, (2) the removal of a wall between the porch and the interior living space, (3) the replacement of eight windows with vinyl-clad windows and the replacement of a wooden door with a steel insulated door, (4) the recovering of a floor and the replacement of a ceiling, and (5) repairs to the roof. We shall consider each of these items separately in light of the applicable statute.

MCL 211.27(2); MSA 7.27(2) provides as follows:

> The assessor, beginning December 31, 1976, shall not consider expenditures for normal repairs, replacement, and maintenance in determining the true cash value of property for assessment purposes until the property is sold. Value attributable to the items included in subdivisions (a) to (o) which is known to the assessor and excluded from the true cash value shall be indicated on the assessment roll. This subsection shall apply only to residential property. The following repairs shall be considered normal maintenance if they are not part of a structural addition or completion:
>
> (a) Outside painting.
> (b) *Repairing or replacing* siding, *roof,* porches, steps, sidewalks, and drives.
> (c) Repainting, *repairing, or replacing existing masonry.*
> (d) Replacement of awnings.
> (e) Adding or replacing gutters and downspouts.

(f) *Replacing storm windows or doors.*

(g) Insulation or weatherstripping.

(h) Complete rewiring.

(i) Replacing plumbing and light fixtures.

(j) New furnace replacing a furnace of the same type or replacing oil or gas burner.

(k) Plaster repairs, inside painting, or other re-decorating.

(l) *New ceiling,* wall, *or floor surfacing.*

(m) *Removing partitions to enlarge rooms.*

(n) Replacing automatic hot water heater.

(o) Replacing dated interior woodwork.

Court review of decisions of the Tax Tribunal, in the absence of fraud, is limited to determining whether the tribunal made an error of law or adopted a wrong principle, and the factual findings of the tribunal are final, provided that they are supported by competent and substantial evidence. *Antisdale v Galesburg,* 420 Mich 265, 277; 362 NW2d 632 (1984).

Turning first to the work done on the porch, we are inclined to conclude that petitioner's removal of screens on the porch and the filling of openings thus created with concrete blocks do not come within the purview of the act. It does not come within subdivision (c) since it does not constitute the repair or replacement of existing masonry, but rather the addition of new masonry. On the other hand, it could arguably come within subdivision (b) as the repairing of a porch or under subdivision (f) as the replacing of windows or doors. While this presents a close question, we are inclined to conclude that the replacement of screens with concrete blocks constitutes "a structural addition or a completion" rather than a repair under the act.

We next consider the removal of the wall between the interior living space and the porch. This

activity clearly comes within the provisions of subdivision (m), which provides for the removing of interior partitions to enlarge rooms. By removing the wall to allow the interior living space to expand into what had previously been the porch area, petitioner removed a partition to enlarge a room. Accordingly, this was not properly considered by the assessor.

Next, we must consider whether the replacement of eight windows with vinyl-clad windows and the replacement of a wooden door with a steel insulated door comes within the provisions of subdivision (f), which provides for the replacing of storm windows or doors. We conclude that the subdivision is applicable. It appears that petitioner did replace both storm windows and the underlying wooden-framed windows with vinyl-clad windows and a wooden-framed storm door and the underlying wooden door with a steel insulated door. While this presents a close question, we are inclined to agree with petitioner that this does come within the purview of subdivision (f) inasmuch as storm windows and doors were replaced. We do not believe that the emphasis should be placed on what was installed, but rather what was replaced inasmuch as the statute refers to the *replacing* of storm windows and doors rather than *installing* storm windows and doors. Moreover, we do not believe it equitable to rule against a taxpayer where improvements in the materials available now allow for the replacement of older style windows and storm windows, as two separate units, with a newer unit which renders a separate storm window unnecessary. We believe that the actions taken by petitioner in the case at bar come within the purview of the Legislature's intent in enacting this subdivision.

Next, we consider the work done by petitioner

on the ceiling and floor, apparently repairing water damage. Subdivision (1) clearly includes new ceilings and floor surfacing. Accordingly, the work done by petitioner on the floors and walls comes within the purview of the act.

Finally, we consider the new roof which petitioner built to replace an old roof which was apparently in need of repair. The tribunal rejected the new roof as coming within the purview of the act on the basis that the old roof was of a gable roof design and the new roof was of a hip roof design. We disagree with the tribunal's conclusion. Subdivision (b) includes the repairing or replacing of a roof. Nothing in the statute indicates that the new roof must be of the same design as the old roof. We see no reason why, when a property owner must make repairs or replacement of an old roof, he should be required to build the new roof with the same design as the old roof.[1] Accordingly, we conclude that the tribunal erred in its decision that the new roof did not come within the purview of the act.

For the above reasons, we conclude that the tribunal erred in affirming respondent's inclusion of the above items, with the exception of the masonry work done to the porch windows, in the assessment of petitioner's property. All of those items, with the one exception, shall be excluded from the assessment of the property pursuant to the home improvement act.

We must next consider whether those repairs which were conducted prior to the effective date of the act nevertheless come within the purview of the act. The tribunal concluded that work done

---

[1] A different result might be called for if the new roof permitted a new or additional use of the building, for instance to permit an attic to now be used as living space. However, there is no indication that this was the situation in the case at bar.

prior to December 31, 1976, does not qualify for exclusion under the act. We disagree. As quoted above, the act states that "the assessor, beginning December 31, 1976, shall not consider expenditures for . . . ." Accordingly, the act clearly directs our attention to when the assessor makes his assessment, not to when the work is done. Had the Legislature intended to make the date of the work the triggering event, it could have clearly provided so by stating that the assessor should not consider expenditures made or work performed before December 31, 1976. However, the Legislature did not so state. Since the statute refers to the date after which the assessor may no longer consider these items, we can only conclude that the relevant date is that of the assessment, not of the repair. Although it may be true that a number of these items could have been properly considered by the assessor had petitioner's property been reassessed prior to December 31, 1976, the fact that the assessor failed to reassess petitioner's property by that date simply works to petitioner's advantage and respondent's detriment. Simply put, had respondent wished to include any of these items for which the work had been done prior to December 31, 1976, in the assessment of petitioner's property, it should have reassessed the property prior to that date. It failed to do so and is now foreclosed from including those items in the assessment.

Next, petitioner argues that respondent incorrectly determined the effective age of the house, which is used in determining the appropriate depreciation factor. Basically, the assessor employed an "Effective Year Chart" which considers the actual date the building was constructed and whether it is in above average, average, or below average condition in arriving at an effective age of

the building (as opposed to the actual age) which may then be used to determine the appropriate depreciation factor to apply to the building in arriving at the final assessed value. The essence of petitioner's argument appears to be that the assessor improperly considered the above repairs in determining in which condition classification (above average, average, or below average) to classify petitioner's house, resulting in the house being classified as being "above average" rather than in a lower category.

Although the Tax Tribunal's opinion does refer to petitioner's argument on this issue, the tribunal did not fully analyze the issue inasmuch as it agreed with the assessor that the repairs could be considered in making the assessment. Accordingly, we believe it would be premature for us to fully address this issue at this time. Rather, on remand, the Tax Tribunal shall address the issue of (1) whether those repairs which are excludable under the act from inclusion in the assessed valuation should also be excluded from consideration in determining the effective age of a building and (2), if those repairs should be ignored in arriving at an effective age, the tribunal should determine what the effective age of petitioner's house is without reference to those items which we have concluded should be excluded from the assessment.

Finally, petitioner argues that the tribunal erred in accepting respondent's valuation of his land even though the comparable properties in the area relied upon by the parties had lower valuations. Respondent does not address this question in its brief on appeal. As noted above, our review is limited to questions of law and we must accept the factual findings of the tribunal. Accordingly, we decline to address the question whether the tribunal properly accepted the valuation of the land in

light of the comparable property values. However, we gratuitously note that petitioner's argument seems to have some factual merit and that, while we are unable to require the tribunal to reconsider the issue, we would recommend that it do so.

The decision of the tribunal is affirmed in part and reversed in part and the matter is remanded to the tribunal for further proceedings consistent with this opinion. We do not retain jurisdiction. Petitioner may tax costs in this Court.

Affirmed in part, reversed in part, and remanded.