MULDAVIN v DEPARTMENT OF TREASURY

Docket No. 112679. Submitted December 13, 1989, at Lansing. Decided February 23, 1990. Leave to appeal applied for.

Roger and Jean Muldavin, lessors of oil and gas rights, claimed as credit on their joint state income tax returns for 1980 and 1981 severance taxes which their lessee had withheld from their royalty payments and paid on their behalf to the Department of Treasury. The department disallowed the claimed credit. The Muldavins petitioned the Michigan Tax Tribunal for review of the disallowance. The tribunal dismissed the petition. Petitioners appealed.

The Court of Appeals *held:*

A taxpayer who has paid a tax claimed not to be due may petition the Department of Treasury for a refund of the amount paid or, in a return filed for the tax in question, declare the overpayment and claim a credit. In this case, there was not a petition for a refund and the credit was not claimed on the appropriate return, i.e., a severance tax return.

Affirmed.

TAXATION — STATE TAXES — CREDITS — REFUNDS.

A taxpayer who has paid a state tax claimed not to be due may petition the Department of Treasury for a refund of the amount paid or, in a return filed for the tax in question, declare the overpayment and claim a credit (MCL 205.30[2]; MSA 7.657[30][2]).

Roger Muldavin and Jean Muldavin, in propria personae.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Charles E. Liken,* Assistant Attorneys General, for Department of Treasury.

REFERENCES

Am Jur 2d, State and Local Taxation §§ 549, 550, 1064-1066.

See the Index to Annotations under Refund and Repayment; Taxes.

Before: REILLY, P.J., and CYNAR and T. M. BURNS,* JJ.

PER CURIAM. Respondent disallowed petitioners' claimed credit on their 1980 and 1981 state income taxes for the severance taxes Shell Oil Company, petitioners' lessee, withheld from their royalty payments and paid to the state. Petitioners appealed the disallowance to the Michigan Tax Tribunal, whose hearing officer proposed an order dismissing their appeal. Petitioners now appeal as of right from the tribunal's judgment adopting the proposed order. We affirm.

As landowners and lessors of mineral rights in certain oil and gas wells, petitioners received royalty payments from Shell Oil Company, the lessee and operator of the wells. Shell Oil withheld severance taxes from the royalty payments made to petitioners and paid them to respondent. On their joint 1980 income tax return, petitioners deducted $21,547.62, the severance taxes paid by Shell Oil in that year, as a direct credit against their state income tax liability. On the same return, they deducted $18,031.33, the amount of the severance tax payments made for them by Shell Oil from 1976 through 1979, as an overpayment. At the bottom of the return, petitioners noted that those amounts were "oil severence [sic] well head taxes which we believe are in violation of State Constitution." As a result of petitioners' deductions, the balance due them from the state on their 1980 return was $33,933.77, which they carried over as a credit against their 1981 state income tax liability. On their 1981 income tax return, petitioners credited themselves with that amount, in addition to $32,347.53, the amount of severance tax pay-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

ments made by Shell Oil in that year. At the bottom of the return, they wrote, "please realize that Michigan will gain from the return of WPT [windfall profit taxes] to individuals in State—here on taxes about $15,766.17, plus more local cash."

Respondent disallowed the severance tax credits claimed by petitioners and on May 20, 1983, issued a final assessment of their tax deficiency as $12,183.29, plus interest of $1,782.72, for state income taxes due in 1980 and 1981. Petitioners filed a petition with the Michigan Tax Tribunal opposing the assessment and seeking the return of $71,926.48, the severance taxes withheld plus interest. Respondent moved to dismiss the petition, alleging that the matter was not properly before the tribunal, because petitioners had not followed the statutory procedure for obtaining a refund of severance taxes. After a hearing on December 9, 1985, the hearing officer issued a proposed order in which she found that petitioners had not followed proper procedures to request a refund of severance taxes and that no assessment decision or order existed from which an appeal of a severance tax claim could be entertained. After consideration of the proposed order and petitioners' written exceptions thereto, the tribunal determined that the cause before it was a personal income tax appeal, which was not the proper vehicle for litigating the propriety of the severance tax withholdings made for petitioners by Shell Oil. The tribunal also concluded that petitioners, as lessors, were liable as producers of oil and gas for their share of the severance tax, and adopted the proposed order granting respondent's motion to dismiss.

In the absence of fraud, our review of decisions of the Tax Tribunal is limited to determining whether the tribunal made an error of law or adopted a wrong principle. *Antisdale v City of*

*Galesburg,* 420 Mich 265, 277; 362 NW2d 632 (1984); *Coyne v Highland Twp,* 169 Mich App 401, 405; 425 NW2d 567 (1988). The factual findings of the tribunal are final, provided they are supported by competent and substantial evidence. *Antisdale, supra; Coyne, supra.*

Petitioners contend that they followed the correct procedures for making a claim for the severance tax paid for them to the state by Shell Oil. The tribunal agreed with the hearing officer that petitioners' appeal of respondent's assessment of their income tax was not the proper vehicle for litigating the propriety of the withholding and payment of petitioners' severance tax. We find no error of law or fact in the tribunal's conclusion.

As the hearing officer noted in her proposed order, the severance tax is administered by the revenue commissioner of the Department of Treasury pursuant to the revenue act, 1941 PA 122, as amended, MCL 205.1 *et seq.*; MSA 7.657(1) *et seq.* See MCL 205.306(1); MSA 7.356(1). MCL 205.30(2); MSA 7.657(30)(2) provides two methods for a taxpayer to obtain a refund of the amount paid on a tax claimed not to be due:

> A taxpayer who paid a tax claimed not to be due, within the time period specified as the statute of limitations in the applicable taxing statute, may petition the department for refund of the amount paid. If a tax return reflects an overpayment or credits in excess of *the* tax, the declaration of that fact on the return constitutes a claim for refund. If the department agrees the claim is valid, the amount of overpayment, penalties, and interest shall be first applied to any known liability and the excess, if any, shall be refunded to the taxpayer, or credited, at taxpayer's request, against any current or subsequent tax liability. [Emphasis added.]

Section 30(2) was amended by 1985 PA 211, effective January 8, 1986, but the amendment does not affect our decision here.

Petitioners claim that, in declaring credits for the disputed severance tax on their returns, they properly utilized the second procedure in § 30(2). To the contrary, the hearing officer interpreted that procedure as requiring the return to correspond with the type of tax involved, unless otherwise allowed in the relevant tax statute. Thus, a direct credit for a severance tax overpayment would have to be requested either on a severance tax return or by separate petition; it could not be requested on an individual income tax return. Petitioners have failed to show that that conclusion was an error of law. Moreover, under petitioners' construction of the procedure, taxpayers could claim on their individual income tax returns unauthorized credits for disputed taxes of a nature different from the individual income tax. We are persuaded that if we were to construe the second procedure of § 30(2) as petitioners urge, the result would greatly undermine respondent's administrative efficiency. Therefore, we do not adopt that construction.

Petitioners also appear to claim that their correspondence with respondent in the course of respondent's assessment of their individual income tax liabilities for 1980 and 1981 constituted a petition for refund of their paid severance taxes, in accordance with the first procedure established in § 30(2). To the contrary, the Tax Tribunal found that petitioners made no written request for a refund of the severance taxes as required by the statute. Our review of the record indicates that the tribunal's finding was supported "by competent and substantial evidence." See *Antisdale, supra.* Petitioners neither filed severance tax returns in

which they declared an overpayment of those taxes nor directly requested a refund in writing. Under these circumstances, the dismissal of the petition was not an error of law.

While we need not reach the issue of whether petitioners are producers under MCL 205.312(2); MSA 7.362(2), and thus required to pay their share of the severance tax, MCL 205.301; MSA 7.351, we cannot ignore this Court's decision in *Brown v Shell Oil Co,* 128 Mich App 111; 339 NW2d 709 (1983), lv den 424 Mich 867 (1986), cert den 479 US 829; 107 S Ct 97; 93 L Ed 2d 48 (1986). As defined in § 312(2), a producer is "a person who owns, or is entitled to delivery of a share in kind or a share of the monetary proceeds from the sale of, gas or oil as of the time of its production or severance." According to *Brown, supra* at 119, "all producers, including those holding only royalty interests, were accountable for their pro-rata share of the tax." Like the plaintiffs in *Brown,* who were holders of royalty interests as lessors of mineral rights in oil wells owned and operated by Shell Oil Company, petitioners would be required by statute to pay their share of the severance tax.

Affirmed.